**W. Donald PATTON, Administrator
of the Estate of Brenda L.
Patton, Deceased**

v.

**COMMONWEALTH of Pennsylvania,
DEPARTMENT OF TRANS-
PORTATION, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 1995.

Decided Jan. 5, 1996.

**1092** 

———

John M. Abel, Deputy Attorney General, for appellant.

William E. Haggerty, for appellee.

Before PELLEGRINI and KELLEY, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

 This case arises from the death of Brenda L. Patton when a large tree limb, overhanging the state highway on which she travelled, fell onto her car. Donald Patton (Patton), Administrator of Brenda Patton's estate, filed a wrongful death and survival action in the Court of Common Pleas of Chester County against the Commonwealth of Pennsylvania, Department of Transportation (DOT), alleging that DOT was negligent in maintaining the roadway and tree. A jury returned a verdict in favor of Patton. DOT appeals from the April 10, 1995 order of the trial court, denying DOT's motion for post trial relief and ordering DOT to pay delay damages.[1] We affirm.[2]

The principal issues before us are whether the trial court erred in determining that Patton had adequately established 1) that DOT owed a common law duty to correct the recognizable hazard created by the tree and 2) that the cause of action falls under the real estate exception to sovereign immunity contained in the Judicial Code, 42 Pa.C.S. § 8522(b)(4).

### Background

The facts, as indicated in the trial court's April 10, 1995 opinion, are summarized as follows. On June 1, 1988, Brenda Patton was driving on King Road, a designated state highway in Chester County, when a large limb from a tree fell on her car, killing her. The limb fell from a tree within the Commonwealth right-of-way. The tree had been topped over twenty years ago. No one is sure who topped the tree. The limb had been growing at a forty-five degree angle across the roadway.

At trial, Patton presented expert testimony that the artificial topping of the tree caused the tree to decay and the limb to fail. According to Patton's expert, a topped tree should raise a "red flag" to a well trained tree inspector. Patton introduced DOT's maintenance manual and a United States Forest Service Training video to demonstrate DOT's own guidelines for reasonable care. Additionally, for the purpose of showing control or ownership, Patton presented evidence that DOT removed the tree after the accident.

After the trial, the jury returned a verdict in favor of Patton in the amount of $767,000.00. DOT filed post trial motions. The trial court rejected each assignment of error, but molded the verdict to reflect the statutory cap of $250,000.00 under 42 Pa.C.S. § 8528.

In denying DOT's motions, the trial court stated that Patton's expert testimony, if believed by the jury, was sufficient to show that

---

1. We note that the docket record shows that judgment was entered for the plaintiffs on November 15, 1993. (R.R. at 5a.) DOT filed post trial motions on November 23, 1993. (R.R. at 171a.) On April 10, 1995, the trial court rendered its opinion and order, denying DOT's post trial motions and ordering DOT to pay delay damages. DOT appeals from the April 10, 1995 order. Neither party has questioned the procedure followed in this case. Although we question the finality of the April 10, 1995 order, in the interest of judicial economy, we will address the merits of this appeal pursuant to Pa.R.A.P. 105. *See Southeastern Pennsylvania Transportation Authority v. Hussey*, 138 Pa.Cmwlth. 436, 588 A.2d 110 (1991), *petition for allowance of appeal denied*, 530 Pa. 649, 607 A.2d 258 (1992).

2. The disposition of post trial motions is for the sound discretion of the trial court. *Commonwealth of Pennsylvania, Department of Transportation v. Consolidated Rail Corp.*, 102 Pa. Cmwlth. 611, 519 A.2d 1058 (1986). Under our limited scope of review, we will not reverse a denial of a new trial motion absent an error of law controlling the outcome of the case or an abuse of discretion where the ruling turns on *the weight of the evidence. Id.* Likewise, our scope of review of a denial of a motion for judgment notwithstanding the verdict is limited to determining whether the verdict is supported by sufficient, competent evidence, granting the prevailing party the benefit of every reasonable inference to be drawn from the evidence. *Phillips v. City of Philadelphia*, 148 Pa.Cmwlth. 175, 610 A.2d 509 (1992).

the dangerous condition of the tree was discoverable by reasonable means. The trial court determined that Patton produced sufficient evidence that the tree was within the care, custody, and control of DOT to be within the real estate exception to sovereign immunity. The court rejected DOT's contention that the 8522(b)(5) "pothole" exception rather than the 8522(b)(4) real estate exception to sovereign immunity applies in this case. The court stated that a decayed tree is not the type of dangerous condition contemplated under the "pothole" exception. Additionally, the court stated that the evidence presented showed that the decay of the tree was not caused solely by nature, but was initiated by the artificial topping of the tree. The court held that no notice, either actual or constructive, is required under the 8522(b)(4) real estate exception and, therefore, rejected DOT's request for a jury charge on notice.

By order of May 24, 1995, the trial court adopted its April 10, 1995 opinion and order as the opinion of the court for purposes of appeal.

On appeal to this Court, DOT argues that Patton failed to establish a legally cognizable duty on the part of DOT because the evidence presented failed to show that the defect was discoverable by reasonable inspection. DOT also argues that courts have recognized that rural property owners, like DOT, are not saddled with the same duty to inspect natural conditions as urban property owners. DOT additionally argues that the trial court sanctioned theories of liability, including a "failure to inspect" theory, that are barred by sovereign immunity.

DOT also argues that the dangerous condition of the tree was caused by natural, rather than artificial, elements; therefore, DOT contends that if any exception to immunity is applicable, it is the 8522(b)(5) "pothole" ex-

ception, requiring actual written notice. In the alternative, DOT argues that the trial court erred in refusing its requested point for charge which stated that if the jury found that the allegedly dangerous condition was artificially created, they must determine whether DOT had actual or constructive notice.[3] DOT also argues that Patton failed to establish that the tree was located within the Commonwealth right-of-way.

### Discussion

#### *Duty*

■ In order to maintain a cause of action against a Commonwealth party, the plaintiff must first show that the damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity. 42 Pa.C.S. § 8522(a); *Fidanza v. Department of Transportation*, 655 A.2d 1076 (Pa.Cmwlth.), *petition for allowance of appeal denied,* —— Pa. ——, 668 A.2d 1138 (1995). The plaintiff must then show that the cause of action falls within one of the exceptions to the general grant of immunity contained in the Judicial Code. 42 Pa.C.S. § 8522(b); *Fidanza.*

■ To recover under a cause of action in negligence, the plaintiff must establish: 1) a duty recognized by the law, requiring the actor to conform to a standard of conduct for the protection of others against foreseeable risks; 2) a failure of the actor to conform to the required standard; 3) a causal relationship between the conduct and the resulting injury; and 4) actual loss or damage to the interests of another. *Fidanza.*

■ Our Supreme Court has recognized that DOT, although not an insurer against all defects in highways, is required to maintain highways in a reasonably safe condition for

---

**3.** Specifically, DOT's requested point for charge No. 11 provides as follows:

11. If you find that the alleged dangerous condition existed on June 1, 1988, and that it was caused by artificial conditions, then in determining whether or not the Commonwealth of Pennsylvania, Department of Transportation acted reasonably under all the circumstances here, you must determine whether or not the Commonwealth had actual or con-

structive notice of the allegedly dangerous condition of the highway where plaintiff's accident occurred prior to June 1, 1988. 42 Pa.C.S.A. § 8522(b)(4). Unless you are so convinced by a preponderance of the evidence, you must return a verdict in favor of the Commonwealth of Pennsylvania, Department of Transportation.

(R.R. at 169a.)

travel. *Bendas v. Township of White Deer*, 531 Pa. 180, 611 A.2d 1184 (1992); *See also Good v. City of Philadelphia*, 335 Pa. 13, 6 A.2d 101 (1939). Regarding the duty which DOT owes as a possessor of land, this Court, in *Miranda v. City of Philadelphia*, 166 Pa. Cmwlth. 181, 646 A.2d 71 (1994), applied to DOT the following standard set forth in the Restatement (Second) of Torts § 342 (1965), which provides:

A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land, if, but only if,

(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know of or have reason to know of the condition and the risk involved.

*Miranda*, 646 A.2d at 74 (emphasis deleted).

In *Miranda*, this Court affirmed the trial court's dismissal of a suit against DOT for the plaintiff's failure to establish notice, on the part of DOT, of a dangerous condition of its real estate. In that case, the plaintiff stipulated that DOT had no actual notice of an excavation, undertaken by the Philadelphia Gas Works on a state highway, but argued that DOT had constructive notice of the condition by virtue of its ownership of the street. The trial court rejected the plaintiff's argument that DOT had constructive notice solely by virtue of its ownership of the street. Reviewing the evidence presented, the court determined that DOT had no reason to know of the dangerous condition, which had been in existence for only thirteen days. The trial court, thus, concluded that the plaintiff had failed to state a cause of action in negligence.

 Accordingly, where, as here, injury does not result from faulty construction work on the part of DOT, the liability of DOT, as a possessor of land, arises only when DOT has either had actual or constructive notice of the risk of unreasonable harm. *Fidanza; Miranda.* Before DOT can be charged with constructive notice of a dangerous condition, that condition must have been apparent upon a reasonable inspection. *Fidanza.*

Patton's tree experts testified that the tree posed an obvious hazard. Specifically, Kenneth C. Miller, an expert in arboriculture, testified that the tree raised an "obvious red flag" due to its topping and the propensity of its weight toward the roadway. (Original Record, Hearing of November 10, 1993, N.T. at 303–304.) Dr. Miller explained that topping opens up the tree's entire defense system. (N.T. at 305.) He stated that decay will progressively invade the tree from top to bottom. (N.T. at 305.) He opined that, in this case, the limb fell due to poor attachment caused by decay, originating in the top, and the effects of wind and rain. (N.T. at 306.) Additionally, Gregory L. Layton, a certified arborist, testified that when the top of a tree is removed, another limb will take over as a central leader. (N.T. at 235.) Mr. Layton estimated that the fallen limb was approximately 40 to 45 feet long and weighed at least five tons. (N.T. at 228–29.) He opined that because of decay, the socket holding the limb could no longer hold its weight. (N.T. at 234.) Mr. Layton stated that he automatically considers a tree, such as this, with no central top and a limb protruding at a 45–degree angle, as a hazard requiring removal. (N.T. at 229.)

Additionally, Kevin Munley, a roadside development specialist with DOT at the time of the accident, testified that his duties included systematically driving the state roads looking for hazardous trees. (Hearing of November 9, 1993, N.T. at 122–23; Hearing of November 10, 1993, N.T. at 381.) Mr. Munley acknowledged that topping can endanger the health of a tree by creating a wound that may allow bacteria to enter the tree, causing decay. (Hearing of November 9, 1993, N.T. at 143–44.) He further acknowledged that decay can weaken the area holding a limb, causing the limb to drop. (N.T. at 144.)[4]

---

4. Further, by its own admission, DOT acknowl- edged:

■ Based on our review of the record, we conclude, therefore, that sufficient competent evidence supports a determination that DOT knew or should have known of the potential hazard created by the tree and negligently failed to correct the dangerous condition.

DOT cites no authority for imposing a lesser duty on DOT, under these circumstances, as a landowner charged with the care of a large quantity of land and trees. In *Barker v. Brown*, 236 Pa.Superior Ct. 75, 340 A.2d 566 (1975), cited by DOT, the Superior Court noted, in dicta, the continuing validity of the rule of non-liability of the rural property owner for injury caused to others outside the land by a natural condition of the land. The Superior Court reasoned that the expense of inspecting and repairing natural conditions, for the rural property owner, would be unreasonable compared to the danger involved to others outside the land. In *Heckert v. Patrick*, 15 Ohio St.3d 402, 473 N.E.2d 1204 (1984), also cited by DOT, the Ohio Supreme Court reaffirmed the distinction between the standards of care applicable to rural and urban landowners. The Ohio Supreme Court clarified that, although a rural property owner is not burdened with the duty to inspect trees growing on his or her property, a rural property owner having actual or constructive knowledge of a patently defective condition of a tree must exercise

reasonable care to prevent foreseeable injury. *Id.*

Here, the issue is not whether DOT failed to inspect one of many apparently healthy trees for internal decay. Rather, as established by Patton, the topping of this tree and the disproportionate size of the limb overhanging the roadway should have alerted DOT, charged with the duty of maintaining reasonably safe highways, of the risk of unreasonable harm created by the tree. Liability is, thus, premised on DOT's failure to correct a dangerous condition of which DOT knew or should have known. We will further discuss DOT's argument regarding an alleged impermissible "failure to inspect" theory of liability as it pertains to our discussion of sovereign immunity.

### Immunity

Because Patton established that DOT owed a duty to correct the dangerous condition caused by the topped, decayed tree, we must determine whether DOT's failure to exercise that duty is actionable under an exception to sovereign immunity.

The exceptions to immunity at issue in this case provide as follows:

(4) **Commonwealth real estate, highways and sidewalks.**—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-

---

36. Any roadside tree which constitutes a potential hazard to the motoring public shall promptly be scheduled for removal, either by department forces or by a specialized tree expert contractor. "This is in the Maintenance Manual," (Chapter 13, Section 5, Page 4, No. 5), "By way of further response, where dead, weakened or decayed trees and limbs exist beyond the right-of-way, the property owner shall be notified by certified mail of the condition and advised of the owners' responsibility to remove or be subject to future damage claims, as they may arise, if the tree falls across the highway."
(Hearing of November 9, 1993, N.T. at 94–95.) DOT argues, citing *Huber v. Department of Transportation*, 122 Pa.Cmwlth. 82, 551 A.2d 1130 (1988), *petition for allowance of appeal denied*, 525 Pa. 637, 578 A.2d 931 (1989), that its maintenance manual, requiring the removal of any roadside tree constituting a potential hazard, cannot be used to give rise to a legal duty on the part of DOT to the individual plaintiff in this case. In *Huber*, the plaintiffs alleged that DOT was liable for injuries suffered as a result of a

natural accumulation of ice and snow on a roadway, where the dangerous condition had been in existence for at least seven hours before the accident. The trial court granted summary judgment in favor of DOT, finding DOT immune from suit due to a lack of actual written notice under the 8522(b)(5) exception, 42 Pa.C.S. § 8522(b)(5). We affirmed, holding that DOT's statutory duty to remove ice and snow from the highways did not impose on DOT, under the facts of that case, a specific duty to protect the plaintiffs from the harm suffered. In reaching our decision, we distinguished the facts of *Huber* from those of *Department of Transportation v. Phillips*, 87 Pa.Cmwlth. 504, 488 A.2d 77 (1985), where DOT had actual knowledge of an icy condition of a roadway. We do not believe our holding in the case at bar to be inconsistent with *Huber*. In any event, the trial court specifically prohibited argument to the jury that the manual itself created a duty. The court admitted the manual as evidence of DOT's own standard of care in maintaining roadways safe from hazardous trees. (Hearing of November 15, 1993, N.T. at 449.)

owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

**(5) Potholes and other dangerous conditions.**—A dangerous condition of highways under the jurisdiction of a Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the Commonwealth agency had actual written notice of the dangerous condition of the highway a sufficient time prior to the event to have taken measures to protect against the dangerous condition. Property damages shall not be recoverable under this paragraph.

42 Pa.C.S. § 8522(b)(4) and (5).

 Thus, under Section 8522(b)(4), sovereign immunity is waived where it is alleged that an artificial condition or defect of land itself causes the injury. *Snyder v. Harmon*, 522 Pa. 424, 562 A.2d 307 (1989); *Norbert v. State Police*, 148 Pa.Cmwlth. 505, 611 A.2d 1353 (1992). The dangerous condition must derive, originate from or have as its source the Commonwealth realty. *Snyder*; *Finn v. City of Philadelphia*, 541 Pa. 596, 664 A.2d 1342 (1995). The phrase "dangerous condition" refers to "a state of affairs that hampers or impedes or requires correction." *Fidanza*, 655 A.2d at 1080. Section 8522(b)(4) applies to dangerous conditions of Commonwealth real estate, including highways, except those conditions described in Section (b)(5). 42 Pa.C.S. § 8522. Section 8522(b)(5) applies only where a dangerous condition of a highway is "created by potholes or sinkholes or other similar conditions created by natural elements." 42 Pa.C.S. § 8522.

In interpreting these sections, this Court applied Section 8522(b)(4), rather than (b)(5), in *Trenco, Inc. v. Department of Transportation*, 126 Pa.Cmwlth. 501, 560 A.2d 285 (1989), *petition for allowance of appeal denied*, 525 Pa. 591, 575 A.2d 120 (1990), where a landslide damaged trucks travelling on a state highway. The landslide originated on a steep rock-cut slope adjacent to the highway, within DOT's right-of-way. The plaintiff alleged that the landslide was due to DOT's negligent maintenance of the hillside. The trial court, applying Section (b)(5), granted summary judgment due to a lack of written notice. In reversing the trial court, we reasoned that the dangerous condition was of the land itself, within the general (b)(4) real estate exception, not of the roadway, within the narrower (b)(5) exception.[5]

In contrast, we applied Section 8522(b)(5), requiring written notice, where the dangerous condition of a highway resulted from a pothole in a roadway. *Cressman v. Department of Transportation*, 114 Pa.Cmwlth. 348, 538 A.2d 992 (1988). We reasoned that "potholes or sinkholes, as used in Section 8522(b)(5), are intended to encompass any such holes in the roadway caused by deterioration resulting from a combination of water, freezing, thawing and traffic." *Id.* 538 A.2d at 994.

 In light of the plain language of the statute and *Trenco*, we conclude that the facts of the case at bar support a conclusion that the dangerous condition created by the tree falls within the Section (b)(4) real estate exception. We do not find a decayed tree to be a dangerous condition of a highway, similar to that created by a pothole or sinkhole, as contemplated under Section (b)(5). As stated by the trial court, had the Legislature intended to include such a condition under the (b)(5) exception, it could have simply left out the word "similar" in the description of conditions requiring notice.

 In reaching our decision, we conclude that Patton has adequately established

**5.** In reaching our decision in *Trenco*, we rejected the trial court's rationale that, because the dangerous condition was caused by natural elements, the plaintiff had failed to state a cause of action under Section (b)(4). Consistent with our holding in *Trenco* and the plain language of Section 8522(b)(4), we reject DOT's contention, here, that Section (b)(5) is the exclusive provision applicable to naturally created dangerous conditions.

that the tree was a dangerous condition "of" the Commonwealth realty. It is undisputed that the tree was growing within feet of the roadway. Further, DOT did not dispute that, following the accident, DOT marked the tree with an orange "X" for removal and had the tree removed. Additionally, the owners of the property on which the tree stood testified that the tree was within the Commonwealth right-of-way. (Hearing of November 9, 1993, N.T. at 187, 194.) [6] We agree, therefore, with the trial court's conclusion that the evidence is sufficient to show that the tree was within the Commonwealth right-of-way, under the care, custody and control of DOT.

In denying DOT's appeal, we do not disagree that "some" notice is required under the Section 8522(b)(4) real estate exception. As our case law demonstrates, the notice that is required under the real estate exception is co-extensive with that required under a common law cause of action in negligence. See, e.g., Fidanza; Trenco.[7] As previously, discussed, the trial court properly determined that Patton had presented sufficient evidence of notice to establish a cause of action in negligence. Therefore, the trial court did not err in rejecting DOT's point for charge on notice relating to the (b)(4) real estate exception.

With respect to its argument relating to an impermissible "failure to inspect" theory of liability, DOT cites the 1978 report of the Joint State Government Commission on sovereign immunity, which recommends retention of sovereign immunity for a failure to inspect or improper inspection. (Appellant's Brief, Appendix, Exhibit "A".) DOT, however, cites no authority supporting its argument that the trial court, here, sanctioned an impermissible failure to inspect theory of liability against DOT. To the contrary, the cases cited by DOT, *Kline v. Pennsylvania*

*Mines Corp.*, 120 Pa.Cmwlth. 7, 547 A.2d 1276 (1988) and *Burgan v. City of Pittsburgh*, 115 Pa.Cmwlth. 566, 542 A.2d 583 (1988), *petition for allowance of appeal denied*, 521 Pa. 613, 557 A.2d 344 (1989), are inapposite.

In *Burgan*, DOT issued to a municipality a highway occupancy permit to allow the city to occupy the highway while working to stabilize the adjacent hillside, owned by the city. The project caused a rockslide onto the roadway. This Court determined that DOT had no common law or statutory duty to oversee the city's construction project adjacent to the state highway or to close the roadway during the course of the city's project.

In *Kline*, the plaintiff alleged that the Department of Environmental Resources (DER) failed to perform its statutory duty to insure mine safety. DER did not own the mine or the vehicle which allegedly caused the explosion. This Court rejected the plaintiff's contention that DER's regulatory or enforcement powers gave it direct control over the mine for purposes of the exception to sovereign immunity pertaining to care, custody, and control of real property.

In neither *Burgan* nor *Kline*, had the plaintiff shown that injury was caused by a dangerous condition of real estate under the care, custody or control of a Commonwealth party. As previously discussed, in the case at bar, Patton adequately established that the tree, within the Commonwealth right-of-way, posed a hazard of which DOT knew or should have known. The trial court, therefore, merely followed precedent holding the Commonwealth party liable, under the real estate exception, for negligent failure to correct a dangerous condition of Commonwealth real estate.

Based on the foregoing analysis, we conclude that the trial court properly determined that Patton adequately established a

---

6. We also note that in its Answers to Interrogatories, DOT admitted that the tree was within the Commonwealth right-of-way. (R.R. at 313a–14a.) We find no indication in the record, however, that DOT's Answers to Interrogatories were admitted into evidence.

7. We note that the governmental immunity provisions of the Judicial Code specifically exclude trees, under the care, custody, or control of a local agency, from the real property exception to governmental immunity, 42 Pa.C.S. § 8542(b)(3). Under that act, trees fall within a separate exception, which requires that the agency had actual notice or could reasonably be charged with notice of the dangerous condition, 42 Pa.C.S. § 8542(b)(4).

cause of action in negligence and a waiver of immunity under the real estate exception. Accordingly, we affirm the order of the trial court.

### ORDER

**AND NOW,** this 5th day of January, 1996, the order of the Court of Common Pleas of Chester County at No. 89–06702 is hereby affirmed.

PELLEGRINI, Judge, concurring.

Although I concur in the result of the opinion of this court, I write separately to address the issue of whether there was sufficient evidence to establish that the tree was a dangerous condition of Commonwealth real estate under the Sovereign Immunity Act, 42 Pa.C.S. § 8522(b)(4).

Brenda Patton was killed by a tree limb falling onto her car while driving along King Road, a designated state highway in West Whiteland Township. The pictures in the record show that King Road is a residential street, and that the tree was within a few feet of the cartway of the road and near a driveway. Because the allegation against the Department of Transportation (DOT) in this case was that the tree itself was defective, rather than just the limb, Patton had the burden of proving that the tree was "of" Commonwealth real estate, that is, within the opened right-of-way of King Road, in order to state a cause of action within the real estate exception to Sovereign Immunity. *See Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989).

The majority opinion holds that Patton provided sufficient evidence that the tree was within the Commonwealth right-of-way because the landowner whose property abutted King Road testified that the tree was within DOT's right-of-way, the tree was within feet of the roadway, and DOT marked the tree for removal and had it removed after the accident. The taking or existence of a right-of-way must be done through official action. The "best evidence" of the extent of the right-of-way would be the deed, survey, plot, subdivision plan or opening ordinance that created the street. However, because there

were no objections to any of Patton's evidence on this issue, that evidence is sufficient to meet Patton's burden that the tree was within DOT's right-of-way. Accordingly, I concur.