Linda COLSTON, Appellant,

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY; and Upper Chichester Township; and Commonwealth of Pennsylvania, Department of Transportation.

Commonwealth Court of Pennsylvania.

Argued June 10, 1996.
Decided July 15, 1996.

Michael B. Tolcott, for Appellant.

John P. Capuzzi, Deputy Attorney General, for Appellee.

Before DOYLE and FLAHERTY, JJ., and KELTON, Senior Judge.

DOYLE, Judge.

Linda Colston appeals from a final judgment entered by the Court of Common Pleas of Delaware County which granted the De-

partment of Transportation's motion for compulsory nonsuit on the grounds that the Department lacked pre-accident notice of a dangerous condition which caused Colston to sustain injuries.

The essential facts are as follows. On June 1, 1990, Colston was injured when she exited a Southeastern Pennsylvania Transportation Authority (SEPTA) bus and stepped onto a broken storm sewer grate on Chichester Road, a state-designated highway. The next day, June 2, 1990, Colston reported her accident to the Upper Chichester Police Department, which in turn, notified Robert Bansept, an assistant maintenance manager of the Department, stating that there was a damaged sewer grate on Chichester Road. Mr. Bansept immediately dispatched Ken Shuss, a maintenance foreman of the Department, who removed the broken storm grate that day and disposed of it in a metal recycling bin at the Department's Bordendale yard.

Thereafter, Colston sent the Tort Claims Division of the Attorney General's Office a letter dated June 6, 1990 reciting the above facts for the purpose of notifying the Attorney General of the defective condition of the storm grate. **Colston did not send written notice of the alleged defect to the Department.**

Sometime in the end of 1990, all prior inspection records of the site surrounding the subject grate were purged pursuant to established Department policy.

As a result of her accident, Colston filed suit against the Department[1] alleging that the Department was negligent in failing to repair, maintain, inspect or warn Colston of the dangerous condition of the broken grate and thereby caused her injuries.

A jury trial was held on February 22nd and 23rd of 1995 during which, at the close of Colston's evidence, the Department moved for compulsory nonsuit. Because the trial court concluded that our decision in *Miranda v. City of Philadelphia,* 166 Pa.Cmwlth. 181, 646 A.2d 71 (1994), requires that the Depart-

ment be given *actual* pre-accident notice of the alleged dangerous condition, the trial court granted the Department's motion. Thereafter, Colston filed a motion for post-trial relief which was denied by order dated May 18, 1995. Final judgment was entered against Colston on July 11, 1995. The instant appeal followed.

On appeal, Colston argues that the trial court erred in concluding that she was required to establish that the Department had actual pre-accident notice of the defective sewer grate because constructive notice is sufficient under *Miranda.* Colston, however, did not present any evidence of constructive pre-accident notice to the Department of the defective grate, but rather contends that because the Department destroyed evidence *i.e.,* disposed of the grate, constructive notice should have been presumed or, alternatively, the Department should have been estopped from contesting the pre-accident notice issue. She also argues that the trial court abused its discretion in excluding the testimony of Colston's expert witness, Dr. Deegan, whom Colston offered to establish the availability of tests to determine the age of defects in metals such as the subject grate.

Under the Judicial Code, in order to maintain an action against a Commonwealth agency, a plaintiff must show: (1) that the damages sought would be recoverable under the common law or under a statute creating a common law cause of action against one not afforded an immunity defense; and (2) that the injury falls within one of the exceptions to sovereign immunity found at Sections 521–8522 of the Judicial Code, 42 Pa.C.S. §§ 8521–8522. In the instant case, Colston alleged that the Department was negligent by failing to properly maintain the sewer grate and/or failing to warn of the grate's defective condition.

■ It is beyond question that the elements of a basic negligence cause of action

---

1. Colston's complaint was initially filed in the Court of Common Pleas of Philadelphia County and named SEPTA, Upper Chichester Township and the Department as defendants. By order

dated October 30, 1991, the matter was transferred to Delaware County; Upper Chichester Township and SEPTA were dismissed by orders not relevant in the instant appeal.

are: "(1) a duty recognized by law, requiring the actor to conform to a certain standard of conduct; (2) a failure of the actor to conform to that standard; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damages to the interests of another." *Miranda,* 646 A.2d at 74.

■ The court below granted the Department's motion for nonsuit on the basis that Colston failed to meet her burden with regard to the first element of her *prima facie* case, *i.e.,* that she failed to establish that the Department owed her a duty because the Department did not have pre-accident notice of the defective condition. In *Miranda,* 646 A.2d at 74, we specifically explained the scope of a possessor of land's duty to licensees [2], quoting the Restatement (Second) of Torts § 342 (1965):

A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land, if, but only if,

(a) *the possessor knows or has reason to know of the condition* and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

(c) the licensees do not know of or have reason to know of the condition and the risk involved. (Emphasis added.)

The trial court in the instant case construed the language, "the possessor knows or has reason to know of the condition," to mean that the Department would only be liable if it had *actual* pre-injury notice of the defective condition and, accordingly, constructive notice would not be sufficient to establish the Department's duty to Colston.

We must respectfully disagree. First, the plain meaning of the phrase "the possessor knows or *has reason to know of the condition*" is that a possessor of land is liable for defects of which he or she has *constructive* knowledge as well as those of which he or she has *actual* knowledge. Second, the *Miranda* Court, in relying on Section 342 of the Restatement to dismiss the complaint, did not reject the concept of constructive notice, but rather, held only that the sole evidence presented in that case, *viz.* the Department's ownership of the defective property, did not, by itself, establish constructive notice of the defect.

■ Accordingly, we hold that the trial court erred in concluding that *Miranda* required Colston to establish *actual* pre-injury notice to meet her burden in establishing the first element of a negligence cause of action against the Department. However, because we further hold that Colston failed, as a matter of law, to establish constructive pre-accident notice to the Department, for the reasons hereinafter discussed, we affirm the trial court's decision.

Colston argues that she would have presented evidence to establish constructive pre-accident notice to the Department, *viz.* written records of third party complaints regarding the grate and expert testimony regarding the cause and age of the defects in the sewer grate, but was prevented from doing so by the Department which destroyed this crucial evidence. Therefore, Colston argues, pre-accident constructive notice should be presumed, or, alternatively, the Department should be estopped from contesting the pre-accident notice issue.

In support of her position, Colston relies upon *Roselli v. General Electric Company,* 410 Pa. Superior Ct. 223, 599 A.2d 685, (1991), *petition for allowance of appeal granted,* 530 Pa. 645, 607 A.2d 255 (1992), in which the Superior Court affirmed summary judgment for General Electric in a products liability case because the plaintiffs' loss of a

---

**2.** A licensee is "a person who is privileged to enter or remain on land only by virtue of the possessor's consent." *Palange v. City of Philadelphia, Law Department,* 433 Pa. Superior Ct. 373, 378, 640 A.2d 1305, 1308 (1994)(quoting Restatement (Second) of Torts § 330 (1965)), *petition for allowance of appeal denied sub nom., Palange v. Priori's Bar and Restaurant,* 542 Pa. 649, 666 A.2d 1057 (1995).

key part of the allegedly defective product deprived General Electric of the opportunity to inspect it, "a necessary step in preparation of its defense." Colston's reliance on this case, however, is misplaced.

The holding in *Roselli* was predicated upon the Court's conclusion that public policy weighed against the plaintiffs because to allow their claims to go forward would encourage false claims and would make the legitimate defense of valid claims more difficult. In the instant case, the Department is the defendant, not the plaintiff, and therefore the policy concerns underpinning the *Roselli* holding are not present here.

Moreover, unlike the plaintiff in *Roselli*, the Department did not lose and/or destroy evidence *in the course of litigation.* Significantly, at the time the Department disposed of the grate and purged its previous complaints regarding the grate,[3] not only hadn't litigation been commenced, but the Department was not even on *notice* of potential litigation.

Section 5522 of the Judicial Code, 42 Pa. C.S. § 5522 provides in pertinent part:

(a) **Notice prerequisite to action against government unit.—**

(1) Within six months from the date that any injury was sustained or any cause of action accrued, any person who is about to commence any civil action or proceeding within this Commonwealth or elsewhere against a government unit for damages on account of any injury to his person or property under Chapter 85 ... or other-

wise **shall file in the office of the government unit, and** if the action is against a Commonwealth agency for damages, then also file in the office of the Attorney General, a statement in writing.... (Emphasis added.)

It is undisputed that Colston never filed a written notice with the Department, even though she retained legal counsel within five days of the accident.[4] At the time that the Department removed the grate and purged its records in accordance with its established standard operating procedures, therefore, it had no knowledge of potential litigation regarding the grate. It follows that the Department was under no duty to preserve the sewer grate or keep prior complaints regarding the grate.

Colston alternatively argues that the Department should be estopped from contesting the notice issue, as a sanction under Pa. R.C.P. No. 4019, for the Department's violation of Pa. R.C.P. No. 4003.2 relating to discoverable evidence.

The fundamental flaw in Colston's reasoning is her presumption that the grate and the records, **at the time of their disposal,** were discoverable items of evidence, the destruction of which would warrant sanctions under Pa. R.C.P. No. 4019.

Discoverable evidence is specifically defined as "any matter, not privileged, which is relevant to the subject matter involved in the *pending* action...." Pa. R.C.P. No. 4003.1(a) (emphasis added). In the instant case, however, as discussed above, at the time the Department recycled the grate and

---

**3.** It is not clear from the record the exact date on which the records of third party complaints regarding the subject grate were purged. However, Robert Bansept, assistant maintenance manager for the Department, testified that once the work is complete on a defect of the road, the records are purged at the end of that year. Presumably, therefore, the records regarding the subject sewer grate were purged at the end of 1990.

**4.** Colston did send written notice to the Office of the Attorney General on June 6, 1990. The notice was defective on its face, however, because it erroneously identified the accident site as Bethel Road, not Chichester Avenue.

Further, we note that Section 5522 of the Judicial Code has been interpreted as an affirmative defense, rather than a statute of limitations, and, thus, by failing to raise the defense of lack of statutory notice in the Department's answer to Colston's complaint, it waived that defense on appeal. Therefore, although we conclude that Colston failed to properly notify the Department under Section 5522 and for that reason that the Department did not act improperly in disposing of the grate and records, Colston's inadequate notice under Section 5522, alone, is not the basis upon which we ultimately affirm the decision of the trial court.

purged the records there was no *pending* action in which the items were involved and, further, the Department was not even on notice of a *potential* action. Accordingly, we hold that the trial court did not err in rejecting Colston's "estoppel" theory.[5]

 Finally, Colston argues that the trial court abused its discretion in excluding the testimony of Dr. Deegan, an expert in metallurgy engineering offered by Colston. The trial court excluded this testimony on the basis that Dr. Deegan had not physically examined the grate in question and, therefore, would not have been able to accurately assess the age and cause of the defect.

Admissibility and scope of an expert's testimony is within the discretion of the trial court; in making the admissibility determination the crucial issue is whether the testimony will assist the trier of fact. *Panitz v. Behrend,* 429 Pa. Superior Ct. 273, 632 A.2d 562 (1993), *petition for allowance of appeal denied,* 539 Pa. 694, 653 A.2d 1232 (1994).

In the instant case, Colston offered Dr. Deegan for the purpose of establishing the availability of tests which measure the age of defects in metal structures such as the subject grate and to bolster Colston's position that the Department sabotaged her case by disposing of the grate. However, as we stated above, the Department's actions in disposing of the grate were proper. Further, the mere *availability* of the tests to determine the age of the defects in the gate is in no way helpful to the jury as to the issue in contention, *i.e.,* whether the Department should have known of the defect before Colston's accident. Accordingly, we conclude that the trial court did not abuse its discretion in excluding this testimony.

Order affirmed.

### *ORDER*

NOW, July 15, 1996, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is hereby affirmed.

---

FLAHERTY, J., concurs in the result only.

---

**5.** This Court questions whether Colston is even arguing estoppel in this context as she does not allege any representation of material fact by the Department upon which she relied to her detriment. *See Foster v. Westmoreland Casualty Company,* 145 Pa.Cmwlth. 638, 604 A.2d 1131 (1992).